IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EDDIE CRUZ-CLAUDIO, et al.,

Plaintiffs

v.                                                          CIVIL 06-1863 (ADC) (JA)

GARCÍA TRUCKING SERVICE, INC.,
et al.,

Defendants

## OPINION AND ORDER

This matter comes before the court on motion for summary judgment filed by defendant García Trucking Services, Inc. (hereinafter, "G.T.S.") on January 29, 2009.  (Docket No. 24.)  Plaintiffs timely filed an opposition to the defendant's motion on February 17, 2009.  (Docket 29.)

Plaintiffs' complaint alleges illegal age-based employment discrimination in the form of constructive discharge and harassment, as well as retaliation, invoking the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, 623, 626(b), and the Equal Employment Opportunity Act, 42 U.S.C. §§ 2000e-3(a) and 5(k), erroneously referring to these acts collectively as "Title VII" (which can only be a reference to Title VII of the Civil Rights Act of 1964).  (Docket No. 5, at 2.)

This court's supplemental jurisdiction is based on claims under Puerto Rico law, namely Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, § 1323-1333, Law No. 115 of December 20, 1991, P.R. Laws Ann. tit. 20, § 194(a), and Articles

CIVIL 06-1863 (ADC) (JA)                    2

1802, 1803 of the Civil Code of the Commonwealth of Puerto Rico, P.R. Laws Ann. tit. 31, §§ 5141, 5142, and Law No. 80 of May 30, 1976, as amended, P.R. Laws Ann. tit. 29, § 185 et. seq.  Plaintiffs' Law No. 115 claims were dismissed. (Docket No. 16.)

Having considered the arguments of the parties, the evidence presented, and for the reasons set forth below, defendant's motion for summary judgment is GRANTED in relation to plaintiff Cruz-Claudio's Age Discrimination in Employment Act ("ADEA") claims of discrimination and retaliation, and the supplementary claims accordingly are DISMISSED without prejudice.

In a few places in the record, (first amended complaint, Docket No. 5; Order on Motion to Dismiss, Docket No. 16), plaintiff's discrimination claims are incorrectly referred to as "Title VII" claims and should be called "ADEA" claims. They will be referred to as ADEA claims here.  A brief review of the legislative history and framework may be helpful, and will cover two areas:  (1) age discrimination and (2) retaliation.

1.      Age Discrimination:  Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e,  prohibits discrimination based on "race, color, religion, sex, or national origin. . . . "  42 U.S.C. § 2000e-2(a)(1).  Age is not one of the protected classes of this statute.  The Equal Employment Opportunity Act of 1972, which is codified concurrently with the Title VII provisions was enacted to amend

CIVIL 06-1863 (ADC) (JA)                3

the Civil Rights Act to include additional definitions as well as enforcement and

other provisions.   It does not, however, amend Title VII to prohibit age

discrimination.  Prohibitions against age discrimination are found in a separate

act, the Age Discrimination in Employment Act of 1964 (amended in 1978, 1986,

and 1996) and codified separately as well, (under Labor rather than General

Welfare) at 29 U.S.C. § 623(a)(1) ("Prohibition of age discrimination"):

> It shall be unlawful for an employer–
>
>> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]

29 U.S.C. § 623(a)(1).

A later portion of the statute, 29 U.S.C. § 626(a) empowers the Equal

Employment Opportunity Commission ("EEOC"), originally formed to administer

Title VII and the Equal Employment Opportunity Act ("EEOA"), to investigate age

discrimination claims as well.

2.      Retaliation:  Title 42 U.S.C. § 2000e-3(a) (cited by plaintiffs in their

amended complaint, Docket No. 5, at 2) prohibits retaliation against those who

have opposed or participated in prosecution of violations of Title VII provisions.

Title VII does not prohibit age-based discrimination, and thus this particular anti-

retaliation provision is not relevant here.  Prohibition of retaliation against those

CIVIL 06-1863 (ADC) (JA)                          4

who have taken action against discriminatory practices with regard to *age* is provided in 29 U.S.C. § 623(d):

> It shall be unlawful for an employer to discriminate against any . . . employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d).

Plaintiffs eventually clarified these issues by making reference to the correct discrimination and retaliation statutes and abandoning reference to the irrelevant ones in their objection to defendants' motion to dismiss. (Docket No. 7; Docket No. 6.) However, the court's order on these motions (Docket No. 16), referred to the discrimination claims as "Title VII claims" (without dismissing those claims). This is mentioned here in order that it be clear that claims referred to in that order and all other motions or pleadings as "Title VII claims" are discussed here as "ADEA claims."

The complaint named Eddie Cruz-Claudio (hereinafter "Cruz"), Gloria Mercado-Maldonado (Cruz' wife), and their conjugal partnership as plaintiffs as to all claims, while both José García-Ortega (hereinafter "García") and Garcia Trucking Services, Inc. (hereinafter "G.T.S"), were defendants to all claims. Pursuant to defendants' motion, plaintiffs Gloria Mercado-Maldonado and the

CIVIL 06-1863 (ADC) (JA)                    5

conjugal partnership were dismissed as to the ADEA claims for lack of standing, while García in his personal capacity was dismissed as a defendant as to the ADEA and Law No. 80 claims because those statutes impose liability only on employers and not on individual supervisors.  (Docket No. 16.)

What remains in this action are plaintiffs' Puerto Rico Law No. 80 claims against corporate defendant G.T.S., plaintiffs' Law No. 100 and Article 1802 claims against all the defendants and plaintiff Cruz' ADEA claims (for employment discrimination and for retaliation) against G.T.S.  Since jurisdiction over the Law No. 80, Law No. 100, and Article 1802 claims is supplemental and dependent on jurisdiction over the ADEA claims, it is only the ADEA claims which will be discussed in detail here.  Summary judgment as to defendant G.T.S.  and plaintiff Cruz on these claims precludes hearing the other claims as to the other parties, and such claims will be effectively dismissed without prejudice.

## I.  BACKGROUND

Plaintiff Eddie Cruz became general manager at García Trucking Services ("G.T.S") on May 17, 2004 after being recruited by defendants.  Cruz has testified that he has "more than 24 years of experience in the trucking business."  When he first became employed with G.T.S., Cruz was approximately 47 years old. Cruz' duties consisted of interviewing employees, preparing appraisals, corresponding with stateside companies to obtain business, making sales and collection efforts,

CIVIL 06-1863 (ADC) (JA)                      6

and establishing tariffs.  (Docket-25-2, at 2, ¶ 7; Docket No. 29-2, at 2, ¶ 7.)
Cruz was supervised by José García Ortega ("Garcia"), the president of the
company, and worked with and/or was supervised by (this fact is in hot dispute)
García's son José A. García Muñiz ("Tito" ).  García's other son, José A. García
Muñiz ("Joey"), also worked at G.T.S.

Throughout his time at G.T.S., Cruz was subjected to "foul language" and
generally rough treatment by García.  Defendants contend, and Cruz admitted in
his deposition, that García used the same foul language and bad temper towards
everyone who worked at the company, including his sons.  Cruz contends however
that in his case the bad treatment escalated over time with a marked increase in
July 2005, and that the maltreatment became physical on at least one occasion.
He also asserts that at times he was unjustly not permitted to work when he
arrived late at the office.  Additionally, Cruz alleges that during the course of his
employment, his title was reduced from general manager to assistant or sales
manager, though his hours and pay did not change until February 2006.

On February 20, 2006, Cruz received a letter, signed by García, reducing his
hours and pay by 50% and citing "the country's current condition" and the need
to maintain "an economically viable operation" as the reasons for this decision.
In his motion in opposition to defendants' motion for summary judgment, Cruz
puts forth a specific allegation that on May 19, 2006, García forcibly escorted him

CIVIL 06-1863 (ADC) (JA)                    7

from company premises and demanded that he return the company car within a week.  (Docket No. 29-2, at 8, ¶ 8.)

Ultimately, Cruz submitted a resignation letter on June 16, 2006, naming among his reasons the fact that García was attempting to replace him with a younger person, and "a pattern of economic, verbal, and physical harassment." (Docket No. 25-5, Ex. VIII, at 18, ¶ 1.)   On June 23, 2006, Cruz filed a discrimination charge with the EEOC.  (Docket No. 25-5, Ex. IX, at 20.) Cruz admitted at deposition that García did not accept his resignation and asked him to return to work via a letter dated June 26, 2006.  (Docket No. 29-2, at 6, ¶ 21.) Cruz declined this invitation and later filed the present action on September 1, 2006.  (Docket No. 1) alleging constructive discharge based on age discrimination. He claims that G.T.S.'s proffered reasons for certain employment actions, specifically the reduction of his hours and pay, are pretext for discrimination.  As to the maltreatment alleged in Cruz' complaint, defendant contends, and Cruz admits in deposition, that all employees were treated equally in this regard.

## II.  STANDARD SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  To succeed on a motion for summary judgment,

CIVIL 06-1863 (ADC) (JA)                    8

the moving party must show that there is an absence of evidence to support the nonmoving party's position.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)).  The party opposing summary judgment must produce "specific facts, in suitable evidentiary form," to counter the evidence presented by the movant.  López-Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000) (quoting Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994)).  A party cannot discharge said burden by relying upon "conclusory allegations, improbable inferences, and unsupportable speculation." Id.; see also Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002) (quoting J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1993)) ("'[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment.").

The court must view the facts in a light most hospitable to the nonmoving party, drawing all reasonable inferences in that party's favor.  Patterson v. Patterson, 306 F.3d 1156, 1157 (1st Cir. 2002) (quoting Griggs-Ryan v. Smith,

CIVIL 06-1863 (ADC) (JA)                    9

904 F.2d 112, 115 (1st Cir. 1990)).   A fact is considered material if it has the potential to affect the outcome of the case under applicable law.   Nereida-González v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).

LOCAL RULE 56

        In the District Court of Puerto Rico, Local Rule 56(b), previously Local Rule 311(12), requires a motion for summary judgment to be accompanied by a separate, short and concise statement of material facts that supports the moving party's claim that there are no genuine issues of material fact in dispute.   These facts are then deemed admitted until the nonmoving party provides a similarly separate, short and concise statement of material fact establishing that there is a genuine issue in dispute.   Local Rules of the United States District Court for the District of Puerto Rico, Local Rule 56(e) (2004); Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001); Ruiz Rivera v. Riley, 209 F.3d 24, 27-28 (1st Cir. 2000); Domínguez v. Eli Lilly & Co., 958 F. Supp. 721, 727 (D.P.R. 1997); see also Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43 (1st Cir. 2001).

        These facts must be supported by specific reference to the record, thereby pointing the court to any genuine issues of material fact and eliminating the problem of the court having "to ferret through the Record." Domínguez v. Eli Lilly & Co., 958 F. Supp. at 727; see Stepanischen v. Merchs. Despatch Transp. Corp., 722 F.2d 922, 931 (1st Cir. 1983); Carmona Ríos v. Aramark Corp., 139 F. Supp.

CIVIL 06-1863 (ADC) (JA)                    10

2d 210, 214-15 (D.P.R. 2001); <u>Velázquez Casillas v. Forest Lab., Inc.</u>, 90 F. Supp. 2d 161, 163 (D.P.R. 2000).  Failure to comply with this rule may result, where appropriate, in judgment in favor of the opposing party.  <u>Morales v. A.C. Orssleff's EFTF</u>, 246 F.3d at 33; <u>Stepanischen v. Merchs. Despatch Transp. Corp.</u>, 722 F.2d at 932.

III.  DISCUSSION

A.     Plaintiff's ADEA Discrimination Claim

1.  Discrimination:  McDonnell-Douglas Framework

The McDonnell Douglas framework  was established by the Supreme Court to evaluate a suit claiming violation of Title VII based on racial discrimination, but has been expanded to evaluate age discrimination claims as well.  <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>see, e.g</u>, <u>Sánchez v. P.R. Oil Co.</u>, 37 F.3d 712, 718-20 (1st Cir. 1994).   McDonnell-Douglas in its essence "established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases." <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993).

The McDonnell Douglas framework begins with placing on the plaintiff the burden of proving a prima facie case of age discrimination. At that point, "[e]stablishment of the prima facie case in effect creates a presumption that the

CIVIL 06-1863 (ADC) (JA)                11

employer unlawfully discriminated against the employee."[1]  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).  To establish the prima facie case, the plaintiff must show:

> (i) that he was at least forty years old when shown the door; (ii) that his job performance met or exceeded the employer's legitimate expectations; (iii) that his employer actually or constructively discharged him (iv) that his employer had a continuing need for the services he formerly furnished.

Dávila v. Corporación de P.R. para la Difusión Pública, 498 F.3d 9, 15 (1st Cir. 2007) (citing Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir. 2007); Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000)).

"The required prima facie showing is not especially burdensome. . . . " Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995) (citing Greenberg v. Union Camp Corp., 48 F.3d 22, 27 (1st Cir. 1995); Smith v. Stratus Computer, Inc., 40 F.3d 11, 15 n.4 (1st Cir. 1994)).  Establishing the prima facie case is "not a heavy burden . . . . " Sabinson v. Tr. of Dartmouth Coll., 542 F.3d 1, 4 (1st Cir. 2008) (citing Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003)).  Nevertheless, the Supreme Court has characterized the burden by stating

---

[1]     "To establish a 'presumption' is to say that a finding of the predicate fact (here, the prima facie case) produces 'a required conclusion in the absence of explanation' (here, the finding of unlawful discrimination)." St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 506 (quoting 1 D. Louisell & C. Mueller, Federal Evidence § 67, at 536 (1977)).

CIVIL 06-1863 (ADC) (JA)                    12

that plaintiff must establish the prima facie case "by a preponderance of the evidence." St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 502 (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 252-53); Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 221 (1st Cir. 2007) (Title VII claim); González v. El Día, Inc., 304 F.3d 63, 75 (1st Cir. 2002) (ADEA claim); Álvarez-Fonseca v. PepsiCola of P.R. Bottling Co., 152 F.3d 17, 24 (1st Cir. 1998) (ADEA claim).

In the instant case, the first two elements of the prima facie case have been met.  It is undisputed that plaintiff Cruz is over 40 years of age and that his job performance was at least satisfactory, but the third and fourth elements remain in dispute.

As to the third element, defendant maintains that plaintiff was not constructively discharged, and offers as support for this contention the fact that Cruz was invited to return to work even after submitting his resignation.  Cruz admits that he was so invited.  (Docket No. 29-2, at 6, ¶ 21.)  Meanwhile, plaintiff has produced what may be generously considered a preponderance of evidence to support this element of his prima facie case; even a cursory review finds minimally sufficient factual support for this element.  Specifically, based on Cruz' testimony (admitted by the defendant) as to García's bad temper and foul language, the working conditions at G.T.S. could be found by a reasonable fact-finder to constitute working conditions so intolerable that a reasonable person in

CIVIL 06-1863 (ADC) (JA)                    13

the employee's position would have felt compelled to resign, which is the standard

for constructive discharge.  See Pa. State Police v. Suders, 542 U.S. 129, 141

(2004).  Constructive discharge by itself may well rise to the level of a genuine

issue.  It ultimately does not preclude summary judgment because its resolution

alone would not allow a reasonable fact-finder to find for the plaintiff on the

discrimination claim.  A person may be constructively discharged without being

discriminated against.   "Discrimination is a form of unfairness; but not all

unfairness is discrimination."  Sabinson v. Tr. of Dartmouth Coll., 542 F.3d at 4.

The court noted "the problem is that Sabinson's evidence did not tend to establish

a discriminatory purpose, but rather tended to establish that a preexisting animus

against her . . . was the reason for the adverse action."  Id.

     As to the fourth element of plaintiff's prima facie case, it is not clear

whether the redistribution of Cruz' responsibilities to existing employees (said

redistribution is generally undisputed but the parties do not concur as to who is

now performing Cruz' duties) establishes that there was a continuing need for the

services plaintiff was providing under the meaning of the standard.  Courts have

held,

> if the job loss was part of a reduction in force, the
> plaintiff need not show replacement by someone with
> equivalent job qualifications.  Instead, to satisfy element
> (4), the plaintiff may demonstrate either that "the

CIVIL 06-1863 (ADC) (JA)                    14

> employer did not treat age neutrally or that younger
> persons were retained in the same position."

LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993) (quoting Hebert

v. Mohawk Rubber Co., 872 F.2d 1104, 1111 (1st Cir. 1989), quoted in Goldman

v. First Nat'l Bank of Boston, 985 F.2d 1113, 1117 (1st Cir. 1993); Lawrence v.

Northrop Corp., 980 F.2d 66, 69 (1st Cir. 1992); Connell v. Bank of Boston, 924

F.2d 1169, 1173 n.5 (1st Cir. 1991)).

Taking as true Cruz' pleaded assertion that his responsibilities were

distributed to García's son, who could be described as a "younger person[s]

retained in the same position" and since defendants have admitted at least that

the tasks have been redistributed (though contending that the tasks are being

performed by several others, some of whom are older than Cruz (see Docket No.

25-2, at 4, ¶ 24), I will  consider that there is sufficient evidence to find this

element of Cruz' prima facie case established.  In other words, the fact that the

tasks continue to be performed, whether by replacement employees or through

reassignment to existing employees, could reasonably be considered as

demonstrative of a continuing need for the services plaintiff had been performing,

and thus establishes the fourth element of his prima facie case.

For the foregoing reasons, and because the summary judgment standard

asks us to consider the facts in the light most favorable to the non-moving party,

CIVIL 06-1863 (ADC) (JA)                    15

I grant that plaintiff has met this initial prima facie burden and move to the next step of the McDonnell Douglas framework, which places a burden of production on the defendant to proffer a non-discriminatory reason for its actions.  Dávila v. Corporación de P.R. para la Difusión Pública, 498 F.3d at 16.

    2.  Discrimination:  Pretext

    Confronted with a motion for summary judgment in an ADEA case, a plaintiff must be able to show that he could meet this burden of demonstrating pretext (in other words, that there are genuine issues of material fact which could, when inferred in his favor, demonstrate age-based discrimination was the real reason for employer's action) at trial.  Torrech-Hernández v. Gen. Elec. Co., 519 F.3d 41, 48 (1st Cir. 2008).  Simply providing some evidence of pretext, or as plaintiff does here, contradicting defendant's reasoning with unsubstantiated and vague allegations, will not suffice:  "[t]he plaintiff must do more than cast doubt on the wisdom of the employer's justification; to defeat summary judgment, the plaintiff must introduce evidence that the real reason for the employer's action was discrimination."  Villanueva v. Wellesley Coll., 930 F.2d 124, 127-28 (1st Cir. 1991) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990); Menard v. First Sec. Serv. Corp., 848 F.2d 281, 287 (1st Cir. 1988)).

    Defendant has asserted its reason for reducing plaintiff's hours as "due to 'the country's condition' and with the objective of trying to maintain 'an

CIVIL 06-1863 (ADC) (JA)                    16

economically viable operation.'" (Docket No. 25-2, at 3; see also Docket No. 25-5, Ex. VII, at 14.)  Plaintiff in turn asserts that this proffer is pretextual and bases this claim on an assertion that no other employees' hours or wages were reduced.

Since plaintiff has made a prima facie case, I temporarily put aside defendant's contention that the reduction of Cruz' hours does not constitute a discharge, as well as the question of whether redistribution of plaintiff's duties demonstrates a continuing need for his services.  I now evaluate the proffered reason for the "discharge".     First, defendant's burden here is one of production, not persuasion,[2] see Dávila v. Corporación de P.R. para la Difusión Pública, 498

---

[2]     The standard of proof under Puerto Rico Law No. 100 imposes an elevated burden of proof on defendant in an employment discrimination case, requiring, "the employer [to] prove, by a preponderance of the evidence, that the challenged action was not motivated by discriminatory age animus." Álvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d at 27-28.

> [W]hen a plaintiff has proved by direct evidence, not inference, that "unlawful discrimination was a motivating factor in an employment decision," there is a greater burden on the employer.  The latter must then "prove by a preponderance of the evidence that the same decision would have been made absent the discrimination." Otherwise, the employer must merely articulate a plausible, nondiscriminatory reason for rejecting the plaintiff."

Ramos v. Roché Prod., Inc., 936 F.2d 43, 47 (1st Cir. 1991) (quoting Fields v. Clark Univ., 817 F.2d 931, 937 (1st Cir. 1987)).  Since the instant plaintiff does not offer any direct evidence of discrimination, I do not elevate defendants burden in this case beyond the minimum "articulation" requirement of McDonnell-Douglas and its progeny.

CIVIL 06-1863 (ADC) (JA)                17

F.3d at 16; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 502; and it "need only 'articulate a legitimate nondiscriminatory reason for the employee's termination." LeBlanc v. Great Am. Ins. Co., 6 F.3d at 842 (quoting Lawrence v. Northrop Corp., 980 F.2d at 68).

Once a non-discriminatory reason is produced, the presumption of discrimination established with the prima facie case is rebutted.  It is thus that "[t]he McDonnell Douglas division of intermediate evidentiary burdens serves to bring the litigants and the court expeditiously and fairly to this ultimate question[ ] [of intentional discrimination, vel non]." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 253.  Furthermore, "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 515-16 (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 258).

Finally, I  look to plaintiff to provide  evidence that the proffered reason is a pretext for discrimination.  In finding pretext there is "no mechanical formula" plaintiffs must follow.  Billings v.Town of Grafton, 515 F.3d 39, 55 (1st Cir. 2008) (quoting Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 39 (1st Cir. 2003) (quoting Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 6 (1st Cir. 2000)).  At the same time, it is "essential that [plaintiff] proffer sufficient competent evidence[.]" Woodman v. Haemonetics Corp., 51 F.3d at 1092.

CIVIL 06-1863 (ADC) (JA)                    18

Furthermore, "[t]o raise an inference of intentional discrimination based on a defendant's proffered reason for a challenged action, a plaintiff must provide 'a substantial showing that respondent's explanation was false.'" <u>Morón-Barradas v. Dep't of Educ. of Commonwealth of P.R.</u>, 488 F.3d 472, 481 n.10 (1st Cir. 2000) (quoting <u>Williams v. Raytheon Co.</u>, 220 F.3d 16, 19 (1st Cir. 2000) (quoting <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 144 (2000)).

In trying to establish that defendants' proffered explanations for the hour and wage reductions are pretext for discrimination, plaintiff Cruz has asserted that in fact the company was doing well financially and there was no need to cut costs. (Docket No. 29-2, at 3, ¶ 12.)  Cruz also asserts that no other employee's hours or wages were reduced.  (Docket No. 29-2, at 3, ¶ 11.)  But as defendant has pointed out, Cruz also admits that he did not participate in the economic management of the company. (Docket 25-4, Ex. I, at 8:12-24).

> Q: Okay.  But I should understand, then, that since 2004 you were not a part of the analysis of the company's financial situation, that's your representation.
>
> A: They, Mr. García, senior, only used me to collect and to intervene with the big companies in the United States to look for business and collect, but he didn't, he didn't tell me: "We're doing good," but it's not that we're doing bad and he didn't show me the numbers.
>
> Q: I see.  You didn't participate in the decisions of the company taking into consideration the company's

CIVIL 06-1863 (ADC) (JA)                    19

> numbers, that is, the asset and liability terms of the
> company. . .
>
> A: No.

(Docket No. 25-4, Ex. 1, at 8:12-24.)

Even if I take Cruz' assertions to be more than speculative, conclusory allegations, Cruz is required to provide the basis of his knowledge and or supporting evidence of those assertions.

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony.

Fed. R. Evid. 602. Federal Rule of Civil Procedure 56(e) regarding affidavits in the context of summary judgment similarly states, "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). This circuit has held that an affiant's competence must be demonstrated affirmatively ("Rule 56(e) requires that the affidavit . . . set forth facts that would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein." Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000); Hoffman v. Applicators Sales & Serv., Inc., 439 F.3d 9, 14 (1st Cir. 2006); and furthermore that

CIVIL 06-1863 (ADC) (JA)                    20

statements must be "supported with particularized factual information." <u>Pérez v.
Volvo Car Corp</u>., 247 F.3d 303, 316 (1st Cir. 2001). Indeed, failure to properly
support statements in an affidavit has resulted in summary judgment against the
party so failing:

> [Plaintiff's] affidavit does not contain adequate specific
> factual information based on personal knowledge to back
> his allegation of . . . discrimination and so create a triable
> issue.   In large part, it contains only [plaintiff's] own
> speculation about the way the [place of employment] was
> run.   Thus [plaintiff] cites no supporting evidence to
> which he could testify in court tending to prove his
> conclusory allegation[s] . . . Neither did [Plaintiff]
> indicate how he had come to have personal knowledge of
> these alleged facts.

<u>Quiñones v. Buick</u>, 436 F.3d 284, 290-91 (1st Cir. 2006) (citing <u>Cadle Co. v.
Hayes</u>, 116 F.3d 957, 961 & n.5 (1st Cir. 1997)), where a "self-serving affidavit
[was in]sufficient to defeat summary judgment [because it] neither contain[ed]
enough specifics nor [spoke] meaningfully to matters within [the plaintiff's]
personal knowledge.'" <u>Quiñones v. Buick</u>, 436 F.3d at 291 (quoting <u>Cadle Co. v.
Hayes</u>, 116 F.3d at 961 n.5); <u>see also</u> <u>Quiñones v. Buick</u>, 436 F.3d at 291
("Without first-hand knowledge of facts supporting his allegations, [plaintiff] could
not simply testify to a belief that [another employee] was given advantages that
[plaintiff] was not."); <u>Velázquez-García v. Horizon Lines of P.R., Inc.</u>, 473 F.3d 11,

CIVIL 06-1863 (ADC) (JA)                    21

18 (1st Cir. 2007) (citing <u>Napier v. F/V Deesie, Inc.</u>, 454 F.3d 61, 66 (1st Cir. 2006)).

     In the instant case, plaintiff Cruz does not offer any evidence, nor set forth any specific facts to support a finding that he has personal knowledge of the matters to which he testifies in his sworn statement (matters which purport to cast the shadow of pretext on defendant's proffered reasons for its actions).  He has not produced any documentary support or named the basis of his knowledge as to  either of his assertions that (a) no other employee's hours were cut or (b) that defendant G.T.S. was doing well financially and thus there was no need to cut Cruz' hours.  Notwithstanding the personal knowledge issue, plaintiff has not identified specific facts (e.g, numerical data, reported or recorded information, etc.) supporting those allegations at all.  Without support, these assertions  do not provide any basis on which a reasonable fact-finder could conclude that G.T.S.'s proffered reasons for the reduction in Cruz' hours (putting aside the question of whether this reduction amounts to constructive discharge) are false, let alone wholly pretextual for age discrimination.  Thus, these assertions are not sufficient to meet Cruz' burden of demonstrating that G.T.S.'s proffered reasons for its actions were pretext for discrimination.

     In sum, I find that plaintiff has failed to present a genuine issue of material fact as to whether proffered reasons for its actions are pretextual.  Thus there is

CIVIL 06-1863 (ADC) (JA)                    22

no material issue here of "discrimination vel non."  St. Mary's Honor Ctr. v. Hicks,

509 U.S. at 518 (quoting United States Postal Serv. Bd. of Governors v. Aikens,

460 U.S. 711, 714 (1983)).

Since plaintiff Cruz has failed to demonstrate that there are material facts

genuinely in dispute as to his ADEA discrimination claim, summary judgment is

GRANTED as to that claim.  See, e.g., Torrech-Hernández v. Gen. Elec. Co., 519

F.3d at 53, where plaintiff's ADEA claim failed in part for "absence of pretext"; see

also Dávila v. Corporación de P.R. para la Difusión Pública, 498 F.3d at 17 (citing

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-47 (2000)) ("to

withstand summary judgment in an age discrimination case, there must be some

significantly probative evidence from which the factfinder can infer that the

employer discharged the employee because of his age."); Velázquez-Fernández

v. NCE Foods, Inc., 476 F.3d at 8 ("it is likely that [plaintiff] has made out a prima

facie case under both the ADEA and [Puerto Rico] Law 100.  However, we need

not definitively decide this question because it is clear he has failed to muster the

evidence required to suggest pretext.").

B.      Retaliation Under the ADEA

Title 29 U.S.C. § 623(d) makes it unlawful for an employer

> to discriminate against any of his employees or applicants
> for employment . . . because such individual . . . has
> opposed any [discriminatory practice of the employer], or

CIVIL 06-1863 (ADC) (JA)                    23

> because such individual. . .has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d).

To make out a prima facie case of retaliation, plaintiff must show that "(1) he engaged in protected activity [either opposing discrimination or participating in anti-discrimination procedures]; (2) he suffered an adverse employment action after or contemporaneous with such activity; and (3) there existed a causal link between the protected activity and the adverse job action." Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 174-75 (1st Cir. 2003) (citing Wyatt v. City of Boston, 35 F.3d 13, 15 (1st Cir. 1994)); see Fantini v. Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009).

Retaliation claims, like ADEA claims, are evaluated under the now-familiar McDonnell Douglas burden-shifting framework. See Mesnick v. Gen. Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991). Once the prima facie case is established as above, the fact-finder looks to the employer to proffer a non-retaliatory reason for the adverse action, and, once that is done, immediately back to plaintiff to demonstrate that the proffered reason is pretext. The instant plaintiff, however, does not survive the first (prima facie) prong as to the retaliation claims. There will be no discussion of G.T.S.'s proffer, nor of its pretextual nature or otherwise.

CIVIL 06-1863 (ADC) (JA)                    24

It is unclear precisely what Cruz is claiming to be the protected activity in which he engaged and was subsequently subject to retaliation.   Based on the record, he appears to be claiming that his protected activity took two forms, and they were separate acts of retaliation as to each.

(i) Cruz' "complaints:"   First, Plaintiff refers generally to undocumented, unsubstantiated "complaints" of maltreatment, during the time of his employment.   (First Amended Complaint, Docket No. 5, at 2, ¶ 4; see also Plaintiffs Opposing Statement of Material Facts, Docket No. 29-2, at 5, ¶ 20.)  He alleges that he was retaliated against for making these "complaints" and that the retaliation took the form of further mistreatment and ultimately, constructive discharge.   He does not assert that these "complaints" in any way indicated his belief that the maltreatment was based on age.

While informal complaints of discrimination could conceivably fit into the "opposition" clause of the prohibition against retaliation, those complaints would have to actually allege discrimination in order for the retaliation claim to be plausible.  The retaliation statute protects employee's opposition to discriminatory practices by employers.  See 29 U.S.C. § 623(d).  Its language demands the interpretation that a protected opposition must in some way reference discrimination.  This court has stated: "in order to trigger statutory coverage

CIVIL 06-1863 (ADC) (JA)                25

plaintiff must specifically base his dissatisfaction or actions on ageist grounds." Machín v. Leo Burnett, Inc., 376 F. Supp. 2d 188, 204-05 (D.P.R. 2005).

(ii) Cruz' resignation letter and EEOC filing:  In their opposition to summary judgment, plaintiffs raise an allegation not previously included in their pleadings, namely that G.T.S. "further retaliated" against Cruz after he resigned by not sending the proper COBRA notification regarding  his right to continue of  health insurance plan.  (Docket No. 29, at 9, ¶ 4.)

This argument is raised in a vague and minimally supported manner, almost as an afterthought, in plaintiff's opposition to summary judgment.  I review it with this circuit's familiar caveat in mind:

> issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.

United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (citation omitted).

In his declaration Subject to Perjury, plaintiff Cruz states that in fact he had the "right" to "continued medical coverage as required by COBRA at G.T.S. expense." (Docket No. 29-3, at 4, ¶ 8.)  This is a legal conclusion which Cruz is not qualified to make.  I assess the "COBRA-notice-violation-as-retaliation" issue based only on the factually supported legal arguments in the pleadings.

CIVIL 06-1863 (ADC) (JA)                    26

Putting the issue of who was to pay for the continued coverage aside, COBRA does require that employees who are terminated be given the opportunity to continue their health-care coverage, 29 U.S.C. § 1161(a), and that employers must notify their health care plan administrators of a termination within 30 days. 29 U.S.C. § 1166(a)(2).  The health care administrators are then required to provide notice to the employee of their right to continued coverage.  29 U.S.C. § 1166(c).  Whether the termination was  by discharge, resignation or constructive discharge is immaterial.  Only termination for gross misconduct, not at issue here, absolves an employer of their notification responsibilities under COBRA.  29 U.S.C. § 1163(2).

I now assess the requirements for plaintiff to make a prima facie case for retaliation with regard to the alleged failure to provide COBRA notice.  Taking as true plaintiff's assertion that there was a COBRA violation, in order to constitute retaliation, Cruz would have to demonstrate that the failure to send the proper notice was an adverse employment action under the meaning of the statute. Furthermore, Cruz would have to establish that G.T.S.'s failure to send the notice was causally linked to a protected activity by Cruz.  Here, the protected activities on which plaintiff appears to be basing this retaliation claim seem to be his resignation via a letter which made age-based discrimination allegations (arguably an "opposition" activity) and also his EEOC filing on June 23 (unquestionably a

CIVIL 06-1863 (ADC) (JA)                    27

protected "participation"), which was approximately 23 days before the time ran out for G.T.S. to send the proper notice.

An adverse employment action for the purposes of a retaliation claim is one that, "a reasonable employee would have found . . . materially adverse, 'which . . . it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'" Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (quoting Washington v. Illinois Dep't of revenue, 420 F.3d 658, 662 (7th Cir. 2005)); see also Carmona-Rivera v. Commonwealth of P.R., 464 F.3d 14, 20 (1st Cir. 2006) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. at 68) ("The alleged retaliatory action must be material, producing a significant, not trivial, harm."), quoted in Canales v. Potter, 614 F. Supp. 2d 213, 218 (1st Cir. 2009).

Furthermore, "[d]etermining whether an action is materially adverse necessarily requires a case-by-case inquiry.  Moreover, the inquiry must be cast in objective terms. . . . Typically, the employer must either (1) take something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities, or (2) withhold from the employee an accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular

CIVIL 06-1863 (ADC) (JA)                    28

period of service. . . .”  <u>Blackie v. Maine</u>, 75 F.3d 716, 725 (1st Cir. 1996) (citations omitted).

Plaintiff Cruz has not demonstrated an adverse action that meets the descriptions cited above.  First, in order for an employer to be subject to the statutory penalties for failure to provide COBRA notice, generally courts require a finding of bad faith or prejudice to the employee.  <u>See</u> <u>González Villanueva v. Warner Lambert</u>, 339 F. Supp. 2d 351, 359 (D.P.R. 2004) (citing <u>Rodríguez-Abreu v. Chase Manhattan Bank, N.A.</u>, 986 F.2d 580, 588-89 (1st Cir. 1993) (stating that even though the district court need not find bad faith or prejudice to impose penalties, it may give dispositive weight to these factors); <u>Bartling v. Fruehauf Corp.</u>, 29 F.3d 1062, 1068-69 (6th Cir. 1994); <u>Godwin v. Sun Life Assurance Co. of Canada</u>, 980 F.2d 323, 328-29 (5th Cir. 1992); <u>Wesley v. Monsanto Co.</u>, 554 F. Supp. 93 (E.D. Mo. 1982); <u>Pollock v. Castrovinci</u>, 476 F. Supp. 606 (S.D.N.Y. 1979)); <u>see also</u> <u>Rodríguez v. Int'l Coll. of Bus. & Tech., Inc.</u>, 364 F. Supp. 2d 40, 49 (D.P.R 2005) (citing <u>Kerkhof v. MCI WorldCom, Inc.</u>, 282 F.3d 44, 56 (1st Cir. 2002)) (“A showing of prejudice or bad faith is not a prerequisite to the imposition of statutory penalties for failing to inform an employee of the right to continued coverage, but in the court's discretion, these factors may be given dispositive weight.”).

CIVIL 06-1863 (ADC) (JA)                    29

Since the record bears no evidence of bad faith and plaintiff has not identified any specific damages ("prejudice" suffered) related to the alleged failure to notify, even were this allegation proven it would not result in penalty to G.T.S., and thus it also fails to rise to the level of an adverse employment action.  (See Rodríguez v. Int'l Coll. of Bus. & Tech., Inc., 364 F. Supp. 2d at 49-50, where court assessed statutory penalties on the basis of plaintiff's specific damage of having to enroll in two different and more expensive health plans, as a result of defendant employer's failure to provide COBRA notice.)  Plaintiff Cruz' failure to allege specific damages related to this alleged failure to notify does not rise to the level of harm resulting from an adverse employment action.

Even if I were to find that failure to send COBRA notice constitutes an adverse action, plaintiff still must demonstrate a causal link between that action and his protected activities.  Such a causal link is not explicitly described or argued in the pleadings.  Plaintiff's only conceivable argument as to causation is a temporal one, as there are no other facts in evidence providing support for causation.

The record reveals two protected activities:  (1) arguably, Cruz' resignation letter, which effectuated the termination, and contained specific allegations of ageism; (2) Cruz' June 23 EEOC filing (notice of which was mailed to defendants

CIVIL 06-1863 (ADC) (JA)                    30

on June 30, Docket No. 7 Ex. I).  Both of Cruz' actions occurred before July 16, which is the approximate date before which G.T.S. was to send the COBRA notice.

In other words, to make a causation argument based on temporal proximity, it has to be assumed that the adverse action consisted of permitting the deadline to pass without sending the notice, and therefore protected activities that occurred before that deadline are the cause of G.T.S.'s failure to meet the deadline.

Though temporal proximity between a protected activity and an adverse action is sometimes sufficient, DeCaire v. Mukasey, 530 F.3d 1, 17 (1st Cir. 2008); Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d at 224, here it does not suffice because even in the presence of a compelling temporal sequence, courts "should consider the actions taken against the employee within the overall context and sequence of events[,] . . . the historical background of the decision, any departures from normal procedure, and contemporary statements by the employer's decision makers." Vargas v. Puerto Rican-Am. Ins. Co., 52 F. Supp. 2d 305, 313-14 (D.P.R. 1999) (citing Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 168-69 (1st Cir. 1998)) (citation omitted), quoted in Canales v. Potter, 614 F. Supp. 2d at 218-19.  Here, the overall context is one in which plaintiff's relationship with his employer may have been characterized by animosity, but until the termination of that employment, there were no allegations of age-based

CIVIL 06-1863 (ADC) (JA)                    31

animosity.  Furthermore, plaintiff has admitted that all employees experienced similarly caustic interactions with G.T.S. president García. While failure to send the required COBRA notice may be considered a departure from normal procedure, there is no evidence on record indicating that this alleged failure was intentional.  In fact, it can only be taken as a given that plaintiff Cruz did not receive the required notice.

Finally, plaintiff has not identified even one statement by any G.T.S. decision makers that would lend support to the interpretation that the alleged failure to send the required COBRA notice was causally connected to retaliatory purposes.

For the foregoing reasons, I cannot find that plaintiff has demonstrated that a reasonable fact-finder could find a causal link between his protected activities and G.T.S.'s alleged failure to send the COBRA notice.

Thus, plaintiff's retaliation claim as to the alleged COBRA violation fails because plaintiff fails to make out a prima facie case as to the fact that the failure was indeed an adverse employment action or that the alleged failure to send the notice was causally linked to plaintiff's protected activities.  Defendant's motion for summary judgment is GRANTED as to all retaliation claims.

CIVIL 06-1863 (ADC) (JA)                    32

C.      Supplemental Claims

As to the local law claims plaintiffs are asserting under Puerto Rico Law No. 80, Puerto Rico Law No. 100 and Puerto Rico Civil Code, Article 1802, because summary judgment is granted as to the federal claim, these local claims will not be considered here.

It is well-settled law that "[u]nder 28 U.S.C. § 1367, '[a] district court may decline to exercise supplemental jurisdiction' if 'the district court has dismissed all claims under which it has original jurisdiction.'" González-de-Blasini v. Family Dep't, 377 F.3d 81, 89 (1st Cir. 2004) (quoting 28 U.S.C. § 1367(c); (citing Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 104 (1st Cir. 2004)). "Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). "[I]n the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). This is such a case. Indeed, as to the Law No. 100 claim, "age discrimination claims asserted under the ADEA and under Law 100 are coterminous." Dávila v. Corporación de

CIVIL 06-1863 (ADC) (JA)                    33

P.R. para la Difusión Pública, 498 F.3d at 18; Torres-Alman v. Verizon Wireless P. R., Inc., 522 F. Supp. 2d 367, 402 (D.P.R. 2007).   Considerations of judicial economy, as discussed, guide my determination that the Law No. 80 and Article 1802 claims should likewise be dismissed.

In sum, having dismissed the federal claim before trial, the court will not retain jurisdiction over plaintiff's supplemental Law No. 100, Law No. 80, or Article 1802 state-law causes of action.   Meléndez v. Autogermana, Inc., 606 F. Supp. 2d 189, 198-99 (D.P.R. 2009).

IV.  CONCLUSION

Plaintiff  has not produced sufficient credible evidence to allow a reasonable fact-finder to conclude that he suffered an adverse employment action due to age-based discrimination or retaliation, and thus defendant's summary judgment motion as to  ADEA claim is GRANTED.   Since the other claims are all brought under local law (specifically, Puerto Rico Law No. 80, Puerto Rico Law No. 100, and Article 1802) under supplementary jurisdiction, they are DISMISSED without prejudice.

The Clerk is directed to enter judgment dismissing the case in its entirety.

At San Juan, Puerto Rico, this 28th day of July, 2009

S/ JUSTO ARENAS
Chief United States Magistrate Judge